## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **In Re: MAX E. SALAS,** | |
| *Debtor.* | |
| **NICOLAAS J. BREKELMANS, *et al.*,** | |
| *Appellants* | |
| **v.** | **Civil Action No. 20-3091 (FYP)** |
| **MAX E. SALAS,** | |
| *Appellee.* | |

### <u>MEMORANDUM OPINION</u>

This case stems from a tragic accident in which two roommates, Nina Brekelmans and Michael Patrick McLoughlin, were killed in a fire at 1610 Riggs Place, NW, Washington, D.C. — a property that was rented to them by debtor and Appellee Max Salas. After the estates of Brekelmans and McLoughlin were awarded substantial monetary damages in a wrongful death suit, Max Salas filed for bankruptcy. In his bankruptcy petition, Salas claimed that the Riggs Place property was exempt from the bankruptcy estate under the District of Columbia's "homestead exemption." The Bankruptcy Court held that Salas could properly claim the exemption. The personal representatives of the estates of Brekelmans and McLoughlin appealed the Bankruptcy Court's ruling to this Court. This Court dismissed the appeal after Appellants filed a Motion to Supplement or Remand; and Appellants then filed a Motion for Reconsideration in the Bankruptcy Court. The Bankruptcy Court denied the Motion for

Reconsideration. The personal representatives appeal again. For the reasons that follow, the Court will affirm the judgment of the Bankruptcy Court.

## BACKGROUND

On June 3, 2015, Michael Patrick McLoughlin and Nina Brekelmans were killed in a fire at 1610 Riggs Place, NW, Washington, D.C. (the "Property"). ECF No. 6-1 (Appellants' Brief Appendix) at 1 ("Homestead Decision"); *see also In re Salas*, Bankruptcy Case No. 18-260, 2018 WL 4621930 (Bankr. D.D.C. Sept. 24, 2018). The decedents' parents and estates pursued wrongful death and survivorship claims in the Superior Court of the District of Columbia against Max Salas ("Salas") and his son Len Salas ("Len"), who rented the Property to the decedents. Homestead Decision at 2. On April 4, 2018, the McLoughlins and the Brekelmans obtained jury verdicts awarding $7.7 million in damages for the death of Michael Patrick McLoughlin and $7.5 million in damages for the death of Nina Brekelmans; Salas and Len are jointly and severally liable for the judgment. *Id.*

### I.    The Homestead Trial and Decision

On April 18, 2018, Max Salas filed a Chapter 11 bankruptcy petition in the District of Columbia. *Id.*[1] In proceedings before United States Bankruptcy Judge S. Martin Teel, Jr., Salas sought to exempt the Property from the bankruptcy estate, pursuant to the District of Columbia's homestead exemption. *Id.*; *see* D.C. Code § 15-501(a)(14).[2] Appellants Nicolaas J. Brekelmans and Gail Gregory Brekelmans (Co-Personal Representatives of the Estate of Nina Brekelmans) and Michael McLoughlin and Martha Johnson (Co-Personal Representatives of the Estate of Michael Patrick McLoughlin) were creditors in the bankruptcy case. After Appellants objected

---

[1]    Len Salas filed his own Chapter 11 Bankruptcy petition in the Middle District of Tennessee. *Id.*

[2]    The homestead exemption provides that "the debtor's aggregate interest in real property used as the residence of the debtor" is "free and exempt from distraint, attachment, levy, or seizure and sale on execution or decree of any court in the District of Columbia." D.C. Code § 15-501(a)(14).

to Salas's invocation of the homestead exemption, Judge Teel held a three-day trial to determine whether Salas could properly claim that exemption ("Homestead Trial"). *See generally* Homestead Decision. Appellants argued that the homestead exemption was inapplicable because Salas was not the record owner of the Property. *Id.* at 1. On September 24, 2018, Judge Teel issued his Homestead Decision, which overruled Appellants' objections and found that Salas holds both legal and beneficial interests in the Property. *Id.* at 57.

In the Homestead Decision, Judge Teel found that Salas and his ex-wife Vickie, as joint owners of the Property, entered into a divorce agreement whereby Vickie would be paid for her interest in the Property with proceeds from a loan taken out by Len and secured by the Property. *Id.* at 3–4. On April 16, 2007, Vickie transferred her interest in the Property to Salas, who then transferred the Property to Len for a recited consideration of $10. *Id.* at 4. Len then obtained a loan, secured by a deed of trust on the Property, to fund the payment to Vickie. *Id.* After this transaction, even though Len was the owner of record, he and Salas agreed that the Property would remain Salas's home. *Id.* at 5. Len treated Salas as the real owner — Salas made mortgage payments; Salas paid for other expenses related to the Property; and the utilities and insurance policies for the Property were in Salas's name. *Id.* at 5–6. Salas has resided at the Property since 1995, except for when he was temporarily displaced by the fire and attendant repair work. *Id.* at 3.

On July 6, 2010, Len and Salas executed an Irrevocable Trust Agreement and Quitclaim Deed, attempting to transfer ownership of the Property to a trust for which Salas would be both the trustee and beneficiary. *Id.* at 8. Judge Teel found that the "Irrevocable Trust" was invalid because, under D.C. law, a trust is valid only if the "same person is not the sole trustee and sole beneficiary." *Id.* at 52–53 (citing D.C. Code § 19-1304.02(a)(5)). Nevertheless, under D.C. law,

the conveyance of property through an invalid trust will convey the legal and beneficial rights to the intended beneficiary if there is consideration. *Id.* (citing *Kemp v. Eiland*, 139 F. Supp. 3d 329, 340 (D.D.C. 2015)).  Judge Teel found that consideration was given for the Property, relying on the Quitclaim Deed, which stated that the transfer was made "for good consideration and for the sum of $100." *Id.* at 54 (citing Quitclaim Deed).  Even though it was a nominal amount, Judge Teel ruled that the $100 was valuable consideration. *Id.* at 54–55 (stating "[i]n effect, Len purchased the Property for $10 in 2007 and sold the Property for $100 three years later in 2010").  Furthermore, Judge Teel found that Salas provided consideration by paying the mortgage on the Property, as well as "all bills, taxes, and other expenses related to the property;" and by agreeing to "take Len's name off the mortgage when Max was able to refinance the Property on his own credit." *Id.* at 55.  Ultimately, "Len put no investment into the Property, and got more out of the Property than he put into it." *Id.*  Thus, Judge Teel concluded that the Property was conveyed to Salas through the Irrevocable Trust and Quitclaim Deed, and that Salas holds both legal and beneficial interests in the Property. *Id.* at 57.  Salas therefore could claim the homestead exemption in his Chapter 11 bankruptcy proceeding. *Id.*

## II.     The Homestead Appeal

Appellants filed a timely appeal of the Homestead Decision on October 8, 2018. *See* Case No. 18-cv-2318 ("Homestead Appeal").  After the Homestead Appeal was fully briefed, Appellants filed a Motion to Supplement or Remand. *See* Appellants' Brief Appendix at 46 ("Motion to Supplement"); *see also* Homestead Appeal at ECF No. 17.  The Motion sought to supplement the record on appeal with three portions of transcripts from Len Salas's bankruptcy case in the Middle District of Tennessee. *See* Motion to Supplement at 2–3.  In the Tennessee bankruptcy proceedings, Len testified that Salas did not pay Len any money when they

4

attempted to convey the Property by Quitclaim Deed. *Id.* Appellants contended that Len's testimony proved that there was no consideration when Salas and Len executed the Irrevocable Trust and Quitclaim Deed; that the Property therefore was not conveyed to Salas; and that Salas consequently could not claim the homestead exemption. *Id.* As an alternative to supplementing the record, Appellants requested a remand to the Bankruptcy Court for consideration of this new evidence. *Id.* at 8.

On January 2, 2020, this Court issued a Memorandum Opinion denying the Motion to Supplement or Remand. *See* ECF No. 4 (Bankruptcy Appeal Record) at DE #290 ("Homestead Dismissal Opinion"); *see also In re Salas*, Case No. 18-cv-2318, 2020 WL 32567 (D.D.C. Jan. 2, 2020) (KBJ).[3] Noting that the testimony at issue was taken in the Tennessee proceeding *after* the Bankruptcy Court had issued its Homestead Decision, the Court declined to allow Appellants to supplement the record on appeal with transcripts of the testimony. *See* Homestead Dismissal Opinion at 6–7. The Court explained that Appellants did not meet the standard for supplementing the record under Bankruptcy Rule 8009(e), which permits correction or modification of the record so that it adequately reflects what happened in the trial court. *Id.* (citing *In re Application of Adan*, 437 F.3d 381, 389 n.3 (3d Cir. 2006)). Nor did Appellants present an extraordinary circumstance that warranted the exercise of the Court's equitable powers to supplement the appellate record with evidence that had not been considered by the Bankruptcy Court. *Id.* at 7 (citing *Colbert v. Potter*, 471 F.3d 158, 165–66 (D.C. Cir. 2006)). Although Appellants requested that the matter be remanded, the Court noted that Appellants had "suggest[ed] that, if this appeal was not pending, Appellants would be able to file a motion for reconsideration or for a new trial in the bankruptcy court." *Id.* (citing Motion to Supplement at

---

[3]    The Homestead Dismissal Opinion was authored by a predecessor judge. This case was transferred to the undersigned judge on October 1, 2021.

7).  The Court therefore chose to "liberally construe" Appellants' request as a "motion for voluntary dismissal" of the appeal, which would leave Appellants free to pursue additional litigation before the trial court.  *Id.* at 8.  Accordingly, the Court dismissed the appeal.  *See generally id.*  Notably, Appellants did not seek reconsideration of the Homestead Dismissal Opinion; nor did they appeal that Opinion.

### III.    The Motion for Reconsideration and Reconsideration Decision

Two months after the Homestead Appeal was dismissed, Appellants filed a Motion for Reconsideration of the original Homestead Decision in the Bankruptcy Court on March 6, 2020.  *See* Appellants' Brief Appendix at 50 ("Motion for Reconsideration"); *see also* Bankruptcy Case No. 18-260, Dkt. No. 321.  The Motion for Reconsideration argued that the Homestead Decision was erroneous, based on new evidence from Len Salas's bankruptcy case.  *See generally* Motion for Reconsideration.  The Motion for Reconsideration did not address whether the procedural posture of the case would permit the Bankruptcy Court to reopen its consideration of the Homestead Decision.  *Id.*  On October 13, 2020, the Bankruptcy Court issued its memorandum decision denying the Motion for Reconsideration.  *See* Appellants' Appendix Brief at 55 ("Reconsideration Decision"); *see also In re Salas*, Bankruptcy Case No. 18-260, 2020 WL 6054783 (Bankr. D.D.C. Oct. 13, 2020).

In the Reconsideration Decision, Judge Teel thoroughly examined all of the procedural avenues for reconsidering the Homestead Decision; and determined that each option was foreclosed by untimeliness and insufficiency on the merits.[4]  *See generally* Reconsideration Decision.  Judge Teel considered the Motion for Reconsideration under Federal Rules of Civil

---

[4]    Judge Teel noted that Appellants were required to file any motion for relief from the Homestead Decision in a timely manner, even though an appeal was pending.  *See* Reconsideration Decision at 21–23 (citing Fed. R. Bankr. P. 8008(a); *Carr v. District of Columbia*, 543 F.2d 917, 926 n.70 (D.C. Cir. 1976) ("[A] timely Rule 60(b) motion predicated on newly-discovered evidence can be made notwithstanding pendency of the appeal.")).

Procedure 60(b)(1), (b)(2), and (b)(6), and explained why relief was untimely under each provision. *Id.* at 19–21.[5]  A motion for relief under Rule 60(b)(1) or (b)(2) is required to be made within "a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c).  Because the Motion for Reconsideration was filed on March 6, 2020, more than seventeen months after the entry of the Homestead Decision on September 24, 2018, the Motion for Reconsideration was untimely under Rules 60(b)(1) and (b)(2).  *See* Reconsideration Decision at 24.  While relief under Rule 60(b)(6) is not subject to the one-year time limit, such relief must be sought within a reasonable time.  *See* Fed. R. Civ. P. 60(c).  Judge Teel found that the seventeen-month gap did not constitute a reasonable amount of time because after the Homestead Decision was issued, Salas had relied on the court's finding that he is the owner of the Property;[6] and Appellants did not provide any valid reason for their delay in seeking reconsideration.  *See* Reconsideration Decision at 25–27.  Thus, the Motion for Reconsideration was deemed untimely under each of the provisions considered.[7]

In the alternative, Judge Teel held that even if the Motion for Reconsideration were timely, it would be denied on the merits.  Under Rule 60(b)(1), which provides a basis for relief

---

[5]     Judge Teel held that Rule 60(a) relief was not available because that Rule provides relief for clerical errors or mistakes, and Appellants sought to attack the substance of the Homestead Decision.  *See* Reconsideration Decision at 20–21.

[6]     In reliance on the Bankruptcy Court's Homestead Decision, Salas pursued his rights as an owner "at substantial expense" by, for example:  (1) applying to hire an appraiser to assist him in seeking refinancing for the Property; (2) applying to employ conflicts counsel to resolve issues involving the bank that held the mortgage on the Property; (3) filing a motion to approve a compromise with the bank that held the mortgage on the Property; and (4) filing an objection to the District of Columbia's secured claim against the Property.  *See* Reconsideration Decision at 25–26.

[7]     Judge Teel further determined that the Motion to Supplement or Remand filed in the District Court did not suspend the time for filing a Rule 60(b) motion in the Bankruptcy Court.  *See* Reconsideration Decision at 27–29. Moreover, the Motion to Supplement or Remand could not be treated as a timely Rule 60(b) motion that was misfiled in the District Court.  *Id.* at 30.  In addition, the District Court did not transfer the Motion to Supplement or Remand to the Bankruptcy Court, and that motion was not presented as one under Rule 60(b).  *Id.* at 32–37.  As discussed, *infra*, the Court agrees with Judge Teel's conclusion that nothing tolled or extended the deadline for the creditors/Appellants to file a motion in the Bankruptcy Court.  *See* Section II n.16.

based on mistake or excusable neglect,[8] Judge Teel ruled that such relief was not warranted because Appellants' Motion merely rehashed arguments that were presented at trial. *Id.* at 43–44. Additionally, he categorized the long delay in presenting Appellants' arguments as a case of "inexcusable neglect." *Id*. at 45. Judge Teel found Appellants' claims unavailing even under Rule 60(b)(2), which allows relief based on newly discovered evidence.[9] He first determined that the transcripts likely did not constitute newly discovered evidence because the same testimony could have been elicited by Appellants' attorney in the Homestead Trial through the exercise of due diligence. *Id.* at 46–48. In any event, Judge Teel ruled that nothing in the new evidence "contradicts the testimony of Max and Len in the homestead exemption trial or undercuts the findings . . . in the *Homestead Decision.*" *Id.* at 48. Judge Teel stated that "[a]ny failure of Max to pay Len $100.00 at the time Len executed the *Quitclaim Deed* would not alter the finding in the *Homestead Decision* that Max provided valuable consideration for the transfer" because a "recitation of a nominal amount of cash paid in exchange for a deed is commonplace, and it is likely equally commonplace that often the consideration is something different." *Id.* at 49. According to Judge Teel, even if Salas did not pay the $100, Len still received valuable consideration "based on Property expenses for which Len was liable and that Max agreed to continue paying" and "based on Max's agreement to attempt to refinance the Property to eliminate Len as a mortgagor." *Id.* at 50. Therefore, Judge Teel found that the new evidence offered by Appellants would not change the holding of the Homestead Decision. *Id.*

---

[8]      "[M]istake, inadvertence, surprise, or excusable neglect" are grounds for relief from a final judgment under that provision. Fed. R. Civ. P. 60(b)(1).

[9]      Rule 60(b)(2) allows for relief for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2).

Judge Teel also ruled that Appellants failed to demonstrate the necessary extraordinary circumstances warranting relief under Rule 60(b)(6).[10]  *Id.* at 51–56.  He reasoned that since the transcripts did not reveal any error under Rule 60(b)(2), they certainly did not demonstrate that the Homestead Decision was manifestly unjust under Rule 60(b)(6).  *Id.*  Lastly, he concluded that the Motion for Reconsideration could not succeed as an independent action under Rule 60(d)(1)[11] because Appellants had a fair opportunity to advance their arguments on appeal and failed to establish that the Homestead Decision was erroneous.  *Id.* at 57.

On October 27, 2020, Appellants filed a timely appeal of the Reconsideration Decision in this Court.  *See* ECF No. 1.  Appellants filed their brief on appeal on December 30, 2020.  *See* ECF No. 6 (Appellants Brief).  Appellee Max Salas filed his Opposition on January 29, 2021, *see* ECF No. 7 (Appellee Brief); and Appellants filed a Reply on February 15, 2021, *see* ECF No. 8 (Appellants Reply).

## LEGAL STANDARD

Federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees "entered in cases and proceedings referred to the bankruptcy judges."  28 U.S.C. § 158. An appellate court's review of motions filed under Federal Rule of Civil Procedure 60(b) is limited to determining whether the trial court abused its discretion in ruling on the motion.  *See Smalls v. United States*, 471 F.3d 186, 191 (D.C. Cir. 2006); *Murray v. District of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995); *In re Hardy*, 561 B.R. 281, 284 (D.D.C. 2016); *see also Greater Se. Cmty. Hosp. Found., Inc. v. Potter*, 586 F.3d 1, 4 (D.C. Cir. 2009) (reviewing discretionary decisions of a bankruptcy court under an abuse of discretion standard); *In re Taylor*, 575 B.R.

---

[10]    Rule 60(b)(6) allows for relief from a final order for "any other reason that justified relief."  Fed. R. Civ. P. 60(b)(6).
[11]    Rule 60(d)(1) allows a court to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).

390, 394 (N.D. Ill. 2017) (stating that the "universe of cases that will qualify for relief on appeal" from a denial of a Rule 60(b) motion is "tin[y]").  This Court's review must take into account that "Rule 60(b) was intended to preserve 'the delicate balance between the sanctity of final judgment . . . and the incessant command of the court's conscience that justice can be done in light of all the facts.'"  *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (quoting *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)).

The abuse-of-discretion standard is met if the court "did not apply the correct legal standard or misapprehended the underlying substantive law," or if its ruling was not "within the scope of permissible alternatives in light of the relevant factors and the reasons given to support it."  *Smalls*, 471 F.3d at 191; *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995).  The bankruptcy judge "has a range of choice," and its decision "will not be disturbed as long as it stays within that range and is not influenced by any mistake of law."  *United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 345 (D.C. Cir. 2014) (citations omitted); *see also Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985) ("If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."); *Smalls*, 471 F.3d at 191 ("[T]he appellate court's function is not to determine the substantive correctness of the judgment but rather is limited to deciding whether the [trial] court abused its discretion in ruling that sufficient grounds for disturbing the finality of the judgment were not shown.").  The bankruptcy judge, "who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion."  *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988).

## ANALYSIS

### I.    Scope of Review

Due to the unusual procedural history of this case, the parties appear to dispute what issues are properly before the Court.  Appellants' brief on appeal is largely devoted to challenging the merits of the Homestead Decision; while Appellee contends that this Court may review only the Reconsideration Decision.  *See generally* Appellants Brief; Appellee Brief. Whether Appellants may now challenge the merits of the Homestead Decision turns on whether this Court's dismissal of the prior appeal of the Homestead Decision was a final order resolving that appeal, or whether it was a remand order to the Bankruptcy Court.  *See* Appellants Brief at 3–4; 41.  If the Homestead Dismissal Opinion was a final order, Appellants may not appeal the Homestead Decision anew.  *See Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Eng'rs*, 571 U.S. 177, 183 (2014) (A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

As noted, Appellants timely appealed the Homestead Decision and the parties submitted briefs on the merits related to that appeal.  When Appellants moved to supplement the appellate record, this Court denied the Motion to Supplement, because Appellants did not seek to supplement the record with documents that the Bankruptcy Court had considered, but instead proffered new evidence.  *See generally* Homestead Dismissal Opinion.  The Court then considered Appellants' alternative request for a remand to allow the new evidence to be considered by the Bankruptcy Court.  *Id.*  Appellants suggested in their Motion to Supplement that if the appeal were not pending, they would be able to file a motion for reconsideration or a motion for a new trial in the Bankruptcy Court.[12]  *See* Motion to Supplement at 4 (stating that

---

[12]    Appellants apparently misunderstood the procedure for filing a motion for reconsideration.  Nothing prevented Appellants from *filing* a motion in the Bankruptcy Court while an appeal was pending; the rules only bar

while an Appellant "may request" reconsideration "[w]hen discovering new information or evidence after trial," "the Bankruptcy Court does not have jurisdiction because of the Appellants' timely appeal").  As a result, the Court construed the Motion to Supplement as a motion for voluntary dismissal of the appeal, to enable unencumbered litigation in the Bankruptcy Court. *See* Homestead Dismissal Opinion at 7–8.  The Court granted the motion for voluntary dismissal and dismissed the appeal.  Appellants thereafter filed their Motion for Reconsideration in the Bankruptcy Court.  The Motion for Reconsideration argued for reconsideration of the Homestead Decision based on the new evidence gleaned from Len Salas's bankruptcy case in Tennessee. *See generally* Motion for Reconsideration.

In his Reconsideration Decision, Judge Teel found that the Homestead Dismissal Opinion was a final decision that resolved the appeal of the Homestead Decision, and that Appellants had relinquished their right to challenge the merits of the Homestead Decision when they failed to appeal the Homestead Dismissal Opinion within thirty days.  *See* Reconsideration Decision at 18 (stating that the failure to seek reconsideration or appeal "appear[ed] to have eliminated any appellate rights the judgment creditors had regarding the *Homestead Decision*"); *see also* Fed. R. App. P. 4(a) ("In a civil case . . . the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from."); *Matton Steamboat Co. v. Murphy*, 319 U.S. 412, 415 (1943) (stating the purpose of Rule 4 is "to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands").  Although Appellants contend that Judge Teel's conclusions were "beyond the

---

the Bankruptcy Court from *deciding* such a motion while the appeal is pending.  *See* Fed. R. Bankr. P. 8008; *Carr v. District of Columbia*, 543 F.2d 917, 926 n.70 (D.C. Cir. 1976) ("[A] timely Rule 60(b) motion predicated on newly-discovered evidence can be made notwithstanding pendency of the appeal.").

jurisdiction and authority of the bankruptcy court to make," and constituted an "unwarranted and improper 'advisory opinion,'" Appellants Reply at 3–4, this Court disagrees.  When confronted with Appellants' substantive arguments that challenged the Homestead Decision in the Motion for Reconsideration, the Bankruptcy Court was required to determine whether such arguments were properly before it.[13]

To avoid the unwelcome consequence of Judge Teel's reasoning, Appellants argue that the Homestead Dismissal Opinion (characterized as a "Remand Order" in their briefs), "directed litigation in the bankruptcy court on the impact of the significant testimony detailing the lack of consideration from Max to Len at the time of the attempted 2010 transfer."  Appellants Brief at 42.  Appellants argue that the Bankruptcy Court was required to comply with the "implied rulings" of the District Court.  *See id.* (citing *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998)).  Appellants are correct that a district court's order of remand to a bankruptcy court is not a final order if it directs the bankruptcy judge to hold further proceedings.  *See In re St. Charles Preservation Inv'rs, Ltd.*, 916 F.2d 727, 728 (D.C. Cir. 1990); *see also Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 329 (D.C. Cir. 1989) (stating that a remand order is "interlocutory" rather than "final"); *Am. Haw. Cruises v. Skinner*, 893 F.2d 1400, 1402 (D.C. Cir. 1990) (finding that a district court order remanding to an agency was not final because it

---

[13]      Appellants argue that the "bankruptcy court's Memorandum is not binding upon this court."  Appellants Reply at 13.  In contending that the Bankruptcy Court lacked the authority to decide the finality of the Homestead Decision, Appellants assert that whether they have "the right to continue their appeal of the [Homestead Decision] is an issue of law" that is subject to *de novo* review.  *Id.*  Indeed, this Court has reviewed Judge Teel's legal analysis *de novo* and agrees with him that the Homestead Dismissal Opinion was a final order resolving the appeal; and that Appellants' failure to seek reconsideration of that ruling or to appeal it extinguished Appellants' right to challenge the Homestead Decision.

Appellants contend that the intent of the Homestead Dismissal Opinion was to permit litigation of new evidence in the Bankruptcy Court, and that Judge Teel "refused to listen to those arguments."  *Id.*  Yet in an alternative ruling, Judge Teel in fact did consider Appellants' arguments about the new evidence from Len Salas's bankruptcy proceedings.

gave instructions to engage in reasoned decision making).  Thus, characterizing the Homestead Dismissal Order as a "Remand Order" would permit Appellants to pursue their claims of error related to the Homestead Decision.

Unfortunately for Appellants, however, the Homestead Dismissal Opinion cannot fairly be construed as a "Remand Order."  The Homestead Dismissal Opinion plainly stated that the Court was construing the Motion to Supplement as a "motion for voluntary dismissal of this appeal," and that the Court was dismissing the appeal on that basis.  Homestead Dismissal Opinion at 8.  Faced with a request for a "remand," the Court instead chose to issue an order of "dismissal."  To be sure, the Opinion stated that the appeal would be dismissed "upon remand to the bankruptcy court," as noted by Appellants.  *Id.*; *see* Appellants Reply at 7.  But the stray use of the word "remand" in a sentence that unequivocally grants a motion to dismiss does not convert the dismissal into a remand.  *See* Homestead Dismissal Opinion at 8 ("So construed, this Court finds that Appellant's motion to voluntarily dismiss the instant appeal upon remand to the bankruptcy court should be granted.").  As noted by Judge Teel, when this Court dismissed the appeal of the Homestead Decision, the Court provided no instructions to the Bankruptcy Court to consider the newly proffered evidence.  *See* Reconsideration Decision at 17.  Instead, the Court left it to Appellants to independently pursue the relief that they thought appropriate in the Bankruptcy Court.[14]  *See generally* Homestead Dismissal Opinion.  Appellants did not appeal

---

[14]     In attempting to preserve their appellate rights in the Homestead Decision, Appellants further argue that even if this Court decides that the purpose of the Homestead Dismissal Opinion was "only to allow the Appellants to seek a limited reconsideration," it is clear that the "remand" was not final.  Appellants Reply at 12–13.  Appellants rely on *In re Harrington*, for their assertion that the "remand" order was not a final judgment.  *See* 992 F.2d 3 (1st Cir. 1993).  *Harrington* stated that "a district court remand order . . . is not final . . . unless it resolves all procedural and substantive issues necessary to conclude the entire appeal."  *Id.* at 5–6; *see also id.* (stating that a remand order only contemplating "ministerial" tasks is still final).  According to Appellants, the "remand order" was not final within the meaning of *Harrington* because it did not end the proceedings, as it contemplated further litigation in the Bankruptcy Court.  *See* Appellants Reply at 12–13.  Appellants' argument, however, presupposes that this Court's order was a "remand order."  As noted, the Homestead Dismissal Opinion contained no mandate or instructions for the Bankruptcy Court to take any action.  While the intent may have been to allow further litigation to occur, by

the Homestead Dismissal Opinion, nor did they seek reconsideration of it.  Therefore, the

Homestead Dismissal Opinion "ended the litigation" of the appeal on the merits of the

Homestead Decision.  *See Ray Haluch Gravel Co.*, 571 U.S. at 183; *Am. Haw. Cruises*, 893 F.2d

at 1402.  In other words, the Homestead Dismissal Opinion was a final judgment that precludes

any further appeal of the Homestead Decision.  *See* Reconsideration Decision at 18.

Because the appeal of the Homestead Decision was resolved by a final order of dismissal,

the only appeal that this Court may now entertain is an appeal of the Bankruptcy Court's denial

of the Motion for Reconsideration of the Homestead Decision.  Such an appeal raises for review

only the order of denial itself, not the underlying judgment.  *See Browder v. Dep't of Corr.*, 434

U.S. 257, 263 n.7 (1978) (stating that an "appeal from denial of Rule 60(b) relief does not bring

up the underlying judgment for review"); *see also Am. Bankers Ins. Co. v. Nw. Nat'l Ins. Co.*,

198 F.3d 1332, 1338 (11th Cir. 1999) (an appeal from a bankruptcy court's denial of a motion

for reconsideration "is narrow in scope, addressing only the propriety of the denial or grant of

relief and does not raise issues in the underlying judgment for review").  The Court notes,

however, that Judge Teel addressed the merits of Appellants' arguments based on the new

evidence in an alternative ruling, *see* Reconsideration Decision at 48–51, and this Court will do

the same.[15]

---

failing to give any instructions to the Bankruptcy Court and by stating that the appeal was "dismissed," the Homestead Dismissal Opinion ended litigation of the Homestead Decision and concluded the appeal of that ruling.

[15]     Appellants argue that

> [i]f this Court remanded knowing that any reconsideration was impermissible in the bankruptcy court and also understanding that the Appellants had no right to continue their appeal of the [Homestead] Decision in this Court, the result would be that this Court foreclosed Appellants' right to appeal.  That cannot be the result contemplated by this Court or intended by its [Dismissal Order].

Appellants Reply at 6–7.  This Court acknowledges that foreclosure of Appellants' right to appeal the Homestead Decision likely was not contemplated or intended by the judge who issued the Homestead Dismissal Opinion.  But this Court cannot now rewrite the Dismissal Order, which unambiguously dismissed the appeal of the Homestead Decision.  Appellants could have, but did not, seek reconsideration of the Dismissal Order:  In a reconsideration

## II.     The Bankruptcy Court Did Not Abuse Its Discretion

Judge Teel ruled that (1) the Motion for Reconsideration was untimely under Federal Rule of Civil Procedure 60(b),[16] and (2) even if the Motion for Reconsideration were timely filed, it would fail on its merits.  *See generally* Reconsideration Decision.  Appellants present few arguments that substantively challenge the legal analysis in the Reconsideration Decision, focusing instead on attacking the substance of the Homestead Decision.  *See generally* Appellants Brief; Appellants Reply.  Appellants do argue, however, that the Bankruptcy Court erred in declining to find that the Homestead Decision was "manifestly unjust" under Rule 60(b)(6).  *See* Appellants Brief at 42–43.

Rule 60(b)(6) allows for relief from judgment for "any other reason that justifies relief." *See* Fed. R. Civ. P. 60(b)(6).  A party "must clear a very high bar to obtain relief under Rule 60(b)(6)."  *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007).  To prevail under Rule 60(b)(6), a party must show extraordinary circumstances, such as previously undisclosed evidence that was "so central to the litigation that it shows the initial judgment to have been manifestly unjust."  *Good Luck Nursing Home*, 636 F.2d at 577.  Appellants contend that the

---

motion, they could have advocated instead for a remand order that would have safeguarded their right to appeal the Homestead Decision.  In any event, the prejudice to Appellants is ameliorated by Judge Teel's alternative ruling that takes account of the newly proffered evidence, which this Court will review.

[16]     While Appellants do not challenge Judge Teel's ruling regarding the timeliness of the Motion for Reconsideration, the Court discerns no error in Judge Teel's determination that the Motion was untimely.  Judge Teel did not err in ruling that the pending appeal did not toll the deadline for Appellants to file their Motion for Reconsideration.  *See, e.g.*, *Carr v. District of Columbia*, 543 F.2d 917, 926 n.70 (D.C. Cir. 1976) ("[A] timely Rule 60(b) motion predicated on newly-discovered evidence can be made notwithstanding pendency of the appeal."); *Transit Cas. Co. v. Sec. Trust Co.*, 441 F.2d 788, 791 (5th Cir. 1971) (stating that a Rule 60(b) motion "can be made even though an appeal has been taken and is pending").  Moreover, it would be inappropriate to treat the Motion to Supplement as a misfiled Rule 60(b) motion, as a Rule 60(b) motion must be filed in the trial court.  *See Bankers Mortg. Co.*, 423 F.2d at 78 ("The motion for relief from final judgment must be filed in the [trial] court and in the action in which the original judgment was entered.").  Further, the District Court lacked the power to extend the deadline for filing a Rule 60(b) motion.  *See Goland v. CIA*, 607 F.2d 339, 372 (D.C. Cir. 1978) (stating that "the one-year period is not tolled by a pending appeal, and under the federal rules no court has power to extend the deadline").  Lastly, the District Court did not transfer the Motion to Supplement to the Bankruptcy Court, and the Motion to Supplement was not cast as a Rule 60(b) motion.  Therefore, the deadlines for filing a motion for reconsideration under Federal Rule of Civil Procedure 60(b) were in effect, and Appellants' Motion was untimely.

proffered new transcripts show that the Homestead Decision was "manifestly unjust," requiring the Bankruptcy Court to reconsider the decision. *See* Appellants Brief at 42–43 (stating that there was "substantial evidence of no consideration" that "directly contradicted" arguments at the Homestead Trial).  In considering whether relief would be appropriate under Rule 60(b)(6), Judge Teel found that the creditors failed to show the extraordinary circumstances necessary to warrant relief, as the transcripts did not show that the Homestead Decision was incorrect.  *See* Reconsideration Decision at 52–53.  Judge Teel reasoned that even if the revelations in the transcripts were true, any failure by Salas to pay Len $100 when the Quitclaim Deed was executed would not alter the Bankruptcy Court's finding that Salas provided valuable consideration for the Property.  *See id.* at 49–50 (stating that even if Max did not pay $100, Len still received valuable consideration based on the Property expenses for which Len was liable and that Max agreed to continue paying, and based on Max's agreement to have Len removed from the mortgage).

Judge Teel did not abuse his discretion in concluding that the newly proffered transcripts did not demonstrate that the Homestead Decision was "manifestly unjust."  The Court declines to second guess Judge Teel's findings, given his familiarity with the evidence and his thorough analysis of the legal issues.  *See Twelve John*, 841 F.2d at 1138.  Although the evidence in the transcripts undermines the finding that Salas paid Len $100 for the Property pursuant to the Quitclaim Deed, other evidence supports the Bankruptcy Court's ultimate finding that consideration was paid:  Salas agreed to pay expenses for the Property that otherwise would have been Len's financial responsibility; and Salas also agreed to relieve Len of his legal obligation to pay the mortgage.  Therefore, the Homestead Decision was not based on a "fundamental misconception of the facts."  *See Good Luck Nursing Home*, 636 F.2d at 576.  Appellants thus

were not entitled to relief under Rule 60(b)(6), and Judge Teel's denial of their Motion for Reconsideration was not an abuse of discretion.[17]

### III.    The Findings in the Homestead Decision Were Not Clearly Erroneous

While the Court finds it clear that the merits of the Homestead Decision are unreviewable as a procedural matter, the Court finds it appropriate under the circumstances to nevertheless examine Judge Teel's alternative ruling that considered the new evidence presented by Appellants and reaffirmed the Homestead Decision. *See* Reconsideration Decision at 48–53. If Appellants' claims on the merits were properly before this Court, the Court would affirm Judge Teel's ruling.

In any review of the Homestead Decision, this Court could not set aside findings of fact unless clearly erroneous; and the Court would defer to the Bankruptcy Court's findings about the credibility of witnesses. *See* Fed. R. Bankr. P. 8013; *In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999). Appellants would have the burden to show that the Homestead Decision was "clearly erroneous as to the assessment of the facts and not simply that another conclusion could have been reached." *Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 537 (D.D.C. 2008) (cleaned up); *see also Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). "'To be clearly erroneous, a decision must . . . strike [the Court] as wrong with the force of a five week old, unrefrigerated dead fish.'" *In re Johnson*, 236 B.R. at 518 (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

---

[17]      Even if relief under Rule 60(b)(6) were warranted on the merits, such relief was not procedurally available to Appellants as they were also seeking relief under Rules 60(b)(1) and (b)(2). *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 249 (D.C. Cir. 1987) ("[I]t is generally accepted that cases clearly falling under Rule 60(b)(1) cannot be brought within the more generous Rule 60(b)(6) in order to escape the former's one year time limitation."); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (stating that a Rule 60(b)(6) motion is mutually exclusive and cannot be premised "on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)").

Appellants raise numerous arguments seeking to attack and overturn the Homestead Decision in their Brief and Reply.  They contend that the homestead exemption should have been denied because the debtor, Max Salas, had unclean hands.  Appellants Brief at 19.  They additionally argue that their objections to the homestead exemption should have been sustained because Salas did not pay valuable consideration for the purported transfer of the Property.  *Id.* at 22.  They further assert that Judge Teel made numerous erroneous evidentiary rulings related to "when and where the trust documents [pertaining to the Irrevocable Trust and Quitclaim Deed] were found and how."  *Id.* at 40.

At bottom, however, Appellants do not clear the high bar of showing that Judge Teel's decision regarding the homestead exemption was clearly erroneous.  Judge Teel held a three-day trial and wrote a detailed sixty-page opinion, which thoroughly and clearly laid out the path from the evidence to the ruling.  In reading the Homestead Decision, nothing strikes this Court as wrong "with the force of a five week old, unrefrigerated dead fish."  *See In re Johnson*, 236 B.R. at 518.  Salas made the $80,000 down payment on the Property; has lived at the Property since 1995; and pays all the expenses associated with the Property, including the mortgage taken out by Len:  Salas treats the place as his home.  *See* Homestead Decision at 3–6.  Judge Teel reasonably determined that the legal maneuverings of the Salas family to finance a divorce settlement did not change Salas's fundamental relationship to the Property.  And although Appellants argue strenuously that Salas is not credible and that he "clearly played games with his perceived right to the subject property," Appellants Brief at 20, this Court is required to defer to Judge Teel's credibility determinations.  *See Twelve John Does*, 841 F.2d at 1138.  Appellants' disagreement with the outcome of the case does not make Judge Teel's decision clearly erroneous:  The Bankruptcy Court's findings were based on a careful consideration of the

evidence.  *See Anderson*, 470 U.S. at 574.  Thus, this Court would not have overturned Judge

Teel's factual findings regarding Salas's ownership of the Property.

In denying Appellants' Motion for Reconsideration, Judge Teel further ruled (as an

alternative to his procedural analysis) that the new evidence proffered by Appellants did not

contradict the Bankruptcy Court's findings in the Homestead Decision, and thus would not merit

reconsideration of the Homestead Decision.  *See supra* Section II.  Judge Teel held that,

regardless of whether Salas failed to pay the recited consideration of $100 referenced in the

Quitclaim Deed, Salas paid consideration in other forms:  He assumed responsibility for property

expenses and agreed to relieve Len of his legal obligations under the mortgage.  *See*

Reconsideration Decision at 49–50 ("If Max did not pay $100 at closing that does not alter the

finding in the *Homestead Decision* that Len received valuable consideration based on Property

expenses for which Len was liable and Max agreed to continue paying, and based on Max's

agreement to attempt to refinance the Property to eliminate Len as a mortgagor.")  The

Bankruptcy Court did not abuse its discretion in so ruling — the court's analysis was based on

the evidence and its factual findings were not clearly erroneous.  Therefore, even if this Court

could reach the merits of the Homestead Decision, and even if this Court considered Appellants'

arguments regarding the effect of the newly proffered testimony, Appellants would fail to

persuade the Court that the Homestead Decision should be overturned.[18]

---

[18]     In a final attempt to prevail, Appellants assert that this Court should, on appeal, consider the full record,
including the transcripts.  *See* Appellants Reply at 16–17.  According to Appellants, appellate courts have the
discretion to consider an issue raised for the first time in a motion for reconsideration.  *Id.* (citing *In re Coudert
Brothers LLP*, 809 F.3d 94, 100 (2d Cir. 2015)).  While *Coudert* did state that the rule that courts should not
consider arguments raised for the first time in a motion for reconsideration is "not absolute," *id.*, the facts and
holding of *Coudert* are inapplicable here.  The *Coudert* court did not examine when and why a court may consider
new arguments on appeal, but rather stated that that when a court does "consider on appeal arguments raised for the
first time below in a motion for reconsideration and remands on the basis of those arguments, *the lower court must
follow [that] mandate.*"  *Id.* (emphasis added).  Appellants further argue, again relying on *Coudert*, that the
Bankruptcy Court failed to give the "remand order" full effect.  *See* Appellants Reply at 14–15.  As discussed, *supra*
Section I, the Court disagrees that there was a "remand order."  In any event, the Court has considered the new

**CONCLUSION**

For the foregoing reasons, the judgment of the Bankruptcy Court will be affirmed.  A

separate Order will issue this day.


_____
FLORENCE Y. PAN
United States District Judge

Date:   April 19, 2022

---

evidence proffered by Appellants, to the extent that it has examined Judge Teel's alternative ruling concerning that
evidence.